## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| RACHEL BUSHEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )      CIVIL ACTION NO. 1:12-0572 |
| | ) |
| SANDRA BUTLER, | ) |
| Warden, FPC Alderson, | ) |
| | ) |
| Respondent. | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Petitioner's Application to Proceed *in Forma Pauperis* (Document No. 7.) and Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in Federal Custody.[1] (Document Nos. 1 and 8.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

### FACTS AND PROCEDURE

On December 11, 2007, Petitioner pled guilty in the United States District Court for the Western District of Michigan to one count of "Conspiracy to Steal and Possess Stolen U.S. Mail" in violation of 18 U.S.C. §§ 371 and 1708. United States v. Bushey, Case No. 1:07-cr-0264 (W.D.Mich. June 6, 2008), Document Nos. 52 and 59. On June 6, 2008, the District Court sentenced Petitioner to a 27 month term of imprisonment, to be followed by a three year term of supervised release. Id., Document Nos. 108 and 111. Petitioner filed her Notice of Appeal on June 18, 2008.

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

On June 19, 2009, the Sixth Circuit Court of Appeals affirmed Petitioner's sentence. United States v. Bushey, 330 Fed.Appx. 540 (6th Cir. 2009). Petitioner's term of supervised release commenced on November 3, 2009. Bushey, Case No. 1:07-cr-0264, Document 131. United States Probation Officer Mark A. Trowbridge, Sr., filed an "Amended Petition for Warrant or Summons for Offender Under Supervised Release" on September 28, 2011, and the Petition was granted by the District Court on September 29, 2011. Id., Document No. 153. On October 17, 2011, the District Court revoked Petitioner's term of supervised release and imposed a term of imprisonment for "a total term of 12 months." Id., Document No. 165.

On February 27, 2012, Petitioner, acting *pro se*, filed her instant Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody. (Document No. 1.) Petitioner alleges that the BOP is improperly denying her placement in the Mothers and Infants Nurturing Together [MINT] Program and 180 days placement in a Residential Re-Entry Center [RRC]. (Id.) Petitioner states that she "is a 30 year-old pregnant inmate in the last month of her third trimester (9 months) with a due date of March 3, 2012." (Id., p. 1.) Petitioner contends that "when [she] met with her Unit Team on December 6, 2011, she was informed that she was not going to be recommended for the MINT Program." (Id., p. 2.) Petitioner asserts that she "was told by various officials at Alderson FPC that there were no eligibility guidelines for admittance into the MINT Program and that the Unit Team made the recommendation at their discretion; that there were no BOP policies governing assessment." (Id.) Petitioner further complains that "the reasons given for the denial were steeped in character judgments and based upon biased opinions of the Petitioner." (Id., p. 3.) Petitioner alleges that "each Unit Team Member informed her that she was unfit to be a mother, and therefore, should consider placing her newborn in foster care or up for adoption." (Id.,

2

p. 3.) Petitioner argues that the BOP violated 18 U.S.C. § 3621(b) by failing to engage in an individualized determination by applying the five statutory factors. (Id., p. 5.) Petitioner further claims that the BOP failed to consider the three additional factors as set forth in BOP Program Statement 7310.04. (Id.) Petitioner explains that BOP is not in compliance with Section 3621(b) or Program Statement 7310.04 because the "Unit Team, Captain, Associate Warden, and Warden, all failed to acknowledge factors spelled out by 18 U.S.C. § 3621(b) . . . and in the BOP Program Statement 7310.04 9(b) and 10(i)(1)(2)." (Id., p. 6.) Petitioner asserts that "[i]f the Unit Team, AW, and Wardens had followed the Policy and Procedures clearly detailed in Memorandums and Program Statements of the BOP, there would be no doubt as to Petitioner's suitability for placement in the CCC MINT Program or in a 'standard' CCC in her own community or directly on home confinement." (Id.) Thus, Petitioner argues that the BOP's decision to deny her placement in the MINT Program was arbitrary. (Id., p. 9.) Furthermore, Petitioner alleges that she is entitled to longer RRC placement because "[s]taff at Alderson FPC have made it abundantly clear that they believe Petitioner is a "High-Risk" inmate, as she is a violator and an addict." (Id., p. 7.) Petitioner, therefore, requests that this Court "order the Respondent, who is employed by the Federal Bureau of Prisons to promptly consider transferring her into an RRC placement at either the MINT Program, home confinement, or a CCC (half-way house) in her home community." (Id., p. 11.) Petitioner also requests the "Court to employ the Respondent to reconsider her appropriateness for the RRC Placement - type and length of time - using the five factors detailed in 18 U.S.C. § 3621(b), without regard to 28 C.F.R. § 570.20, 570.21." (Id.)

In support of her Petition, Petitioner attaches the following Exhibits: (1) "Affidavit of Petitioner in Support of Motion for Writ of Habeas Corpus" (Document No. 1-1, pp. 2 - 7.); (2) A

copy of Petitioner's "Regional Administrative Remedy Appeal" dated January 11, 2011 (Id., pp. 11 -
18.); (3) A copy of Petitioner's Request for Administrative Remedy dated December 9, 2011 (Id.,
p. 19.); (4) A copy of a "Rejection Notice - Administrative Remedy" from the Administrative
Remedy Coordinator of the Mid-Atlantic Regional Office dated February 9, 2012 (Id., p. 21.); (5)
A copy of the BOP's description of the "Administrative Remedy Process" as contained in the Inmate
Handbook (Id., pp. 23 - 24.); (6) A copy of the BOP's "Memorandum for Chief Executive Officers"
regarding the "Revised Guidance for Residential Reentry Center (RRC) Placements" (Id., pp. 26 -
31.); (7) A copy of excerpts from the Inmate Handbook regarding "Classification and Program
Review" (Document No. 1-2, p. 3.); (8) A copy of the Greenbrier Birthing Center Brochure (Id., pp.
5 - 13.); (9) A copy of Warden Myron L. Batts' Response denying Petitioner's Administrative
Remedy Request (Id., pp. 15 - 16.); (10) A copy of an e-mail from Sue Bushey to United States
Probation Officer Amy VanderVelde dated September 30, 2011 (Id., pp. 18 - 19.); (11) A copy of
a letter from Norm and Sue Bushey to Honorable Janet T. Neff dated October 12, 2011 (Id., pp. 20 -
21.); (12) Copies of letters to Petitioner from her daughter (Id., pp. 23 - 27.); (13) Copies of pictures
of Petitioner and her children (Id., pp. 28 - 29.); (14) Copies of pictures of Petitioner and her co-
workers (Id., p. 30; (15) A copy of the Parenting Classes offered at FPC Alderson (Id., pp. 32 - 33.);
(16) A copy of excerpts from "Broken" by William Cope Moyers (Id., pp. 35 - 40.); and (17) A copy
of Petitioner's Certificate of Completion of Parenting Class (Id., p. 42.).

By Order entered on February 28, 2012, the Court ordered that Respondent file an Answer
to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of
*Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 4.) On
March 8, 2012, Respondent filed her Response to the Order to Show Cause. (Document No. 9.)

4

Respondent argues that Petitioner's Petition should be denied based on the following: (1) "The BOP has fulfilled its obligation to review Petitioner for MINT Placement" (Id., pp. 6 - 8.); and (2) "The BOP has fulfilled its Obligation to Review Petitioner for an RRC Placement Pursuant to the Factors in 18 U.S.C. § 3621(b)" (Id., pp. 8 - 11.).

In support of her Response, Respondent attaches the following Exhibits: (1) The Declaration of Tina Altizer, a Unit Manger at the FPC Alderson (Document No. 9-1, pp. 1 - 6.); (2) A copy of Petitioner's "Inmate Skills Development Plan Program Review" dated December 5, 2011 (Id., pp. 7 - 18.); (3) A copy of Petitioner's "Inmate Skills Development Plan Program Review" dated February 21, 2012 (Id., pp. 20 - 33.); (4) A copy of Petitioner's "Classification Program Review dated November 17, 2011 (Id., p. 35.); and (5) A copy of the BOP's Operations Memorandum regarding "Mothers and Infants Nurturing Together at the Greenbrier Birthing Center" (Id., pp. 37 - 38.).

Petitioner filed her Reply on March 23, 2012. (Document No. 11.) Petitioner states that "[t]here is not one shred of evidence that the BOP appropriately evaluated Petitioner for the MINT Program." (Id., p. 2.) Petitioner alleges that a review of her "Inmate Skills Development Plan Program Review" dated December 5, 2011, reveals that she was never considered for the MINT program. (Id., p. 3.) Petitioner concludes that Respondent did not consider her for MINT Placement because "in the section of the ISD headed 'Previous Team' and 'Current Team' there is no mention of the MINT Program." (Id.) Petitioner further argues that "Ms. Altizer's Declaration is not merely 'bad faith,' but simply put, a false coloring of facts."[2] (Id., p. 4.) Petitioner explains that she disputes

_____

[2] To the extent Petitioner is alleging that Ms. Altizer's Declaration was filed in bad faith, the undersigned finds her claim to be without merit.

5

facts that were contained in the Presentence Report, which were relied upon my the Unit Team. (<u>Id.</u>, p. 5.) Specifically, Petitioner claims she "was eighteen when she began abusing drugs and Petitioner's parents have never 'kicked her out of their home.'" (<u>Id.</u>, p. 5.) Petitioner also argues she was only three months pregnant on September 9, 2011, when she tested positive for cocaine. (<u>Id.</u>, p. 7.) Petitioner, therefore, claims that the Unit Team failed to properly consider her history and characteristics. (<u>Id.</u>, p. 11.) Next, Petitioner "denies that she was appropriately considered for RRC Placement pursuant to the five factors set out in 3621(b)." (<u>Id.</u>, p. 13.) Petitioner alleges that the Unit Team "deemed her inappropriate by their own personal judgments steeped in malice and contempt and not by the 3621(b) factors or other BOP Program Statements." (<u>Id.</u>, p. 14.) Petitioner complains that the Unit Team failed to properly consider "the amazing work she has done to re-bond with her two children" and "the fact that Petitioner was clean and sober for years." (<u>Id.</u>, p. 13.) Petitioner asserts that the Unit Team should have "recommended Petitioner for the 20 week Non-Residential program and intensive outpatient follow-up during RRC placement or the MINT Program considering her history of drug use." (<u>Id.</u>, p. 9.) Therefore, Petitioner argues that the "BOP violated her rights to be fairly assessed for the MINT Program [and RRC placement], and had they followed the rules of Congress and BOP P.S., Petitioner would be with her newborn at this moment and receiving individualized drug treatment." (<u>Id.</u>, p. 15.)

As Exhibits, Petitioner attaches the following: (1) A copy of her "Inmate Skills Development Plan Program Review" dated September, 2011, and January, 2012, containing the "Interpersonal" and "Wellness" Sections (Document No. 11-1, pp. 2 - 3.); (2) A copy of the "Custody Classification Form Instructions (BP-338)" (<u>Id.</u>, pp. 5 - 6.); and (3) A copy of a completed Custody Classification form regarding another inmate (<u>Id.</u>, pp. 7 - 8).

6

## ANALYSIS

Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. Section 3621(b) provides five factors to be considered by the BOP in determining a prisoner's placement:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence -

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Title 18 U.S.C. § 3624(c) provides that a prisoner may be granted pre-release custody allowing a prisoner to serve a portion of her sentence in the community, such as home confinement, placement in a community correctional facility, or RRC. See 18 U.S.C. § 3624.

## 1.   **MINT Placement:**

The MINT Program is a community-based program, which promotes bonding and parenting skills for low-risk female inmates who are pregnant. P.S. 7310.04. Generally, an inmate is placed in the MINT Program two months prior to delivery and will remain in the program for three months following delivery. Id. The MINT Program at the Greenbrier Birthing Center, however, allows an inmate to transfer to the program up to three months prior to delivery and remain in the program an additional 12 to 18 months to bond with the child. (Document No. 9-1, p. 37.) In addition to the

regular CCC referral guidelines found in P.S. 7310.04, an inmate must also meet the following

criteria to be eligible for placement in the MINT Program:

    (1)    Must be pregnant (prior to sentencing date OR upon commitment) with expected delivery date prior to release;

    (2)    Must have community custody prior to transfer (no inmate who poses a significant threat to the community will ordinarily be referred);

    (3)    Must have approval from institution Warden or sentencing judge;

    (4)    Must volunteer and agree to participate in the program; and

    (5)    The offender or guardian must assume financial responsibility for the child's medical care and support, while residing at the MINT facility.

(Document No. 9-1, pp. 3 - 4.); also see P.S. 7310.04, p. 9, Sec. 9(b).

Based upon a review of the record, the undersigned finds that Petitioner was appropriately

considered for MINT placement pursuant to Section 3621(b) and P.S. 7310.04. Respondent filed a

declaration from Ms. Altizer explaining the process used to determine whether MINT placement is

appropriate. (Document No. 9-1, pp. 3 - 4.) Specifically, Ms. Altizer states that the Unit Team

evaluated Petitioner circumstances during her Program Review and "determined that she was not

appropriate for referral to the MINT program due to her past actions and her drug use." (Id., p. 3.)

In support, Ms. Altizer states as follows:

    13.    Based upon information found in the Supervised Release Violation Report dated October 11, 2011, the Amended Petition for Warrant or Summons for Offender Under Supervision dated October 13, 2011, and the Presentence Investigation Report ("PSR") completed in Inmate Bushey's criminal case, it was determined that she was not appropriate for the MINT program based upon her substance abuse history and her recent documented drug use during her current pregnancy.

    14.    The PSR states that she became pregnant with her first child at age 14, and the child was relinquished to adoption shortly after birth.

    15.    Inmate Bushey began using drugs in high school, and shortly afterward her parents kicked her out of their home due to her drug use. At that time, she became pregnant with second child. The PSR notes that her parents would watch the child for short periods of time due to her inability to properly care

8

for the child due to her drug use.

16.     Inmate Bushey's parents have since adopted the second child.

17.     As reported by Inmate Bushey, her relationship with drug dealers and other men who provided her with shelter and drugs resulted in her becoming pregnant with another child, who was born in 2005 (her third child).

18.     The PSR states that Inmate Bushey used crack cocaine regularly during the pregnancy, and upon the child's birth, the child possessed crack cocaine in its system. Inmate Bushey admitted using crack cocaine on the day she gave birth, and testing revealed that she had used the substance 30, 60, and 90 days prior to giving birth.

19.     The child was removed from her care initially, but was later returned to her under the supervision of protective services.

20.     Later, she tested positive for cocaine on at least two occasions after the child had returned to her care.

21.     The child has since been adopted by Inmate Bushey's parents.

22.     In the Supervised Release Violation Report dated October 11, 2011, it is noted that Inmate Bushey's term of Supervised Release commenced on November 3, 2009.

23.     Prior to that time, she was in a Residential Re-entry Center ("RRC"), and was given a fair prognosis in her discharge summary. It was noted that Inmate Bushey was easily influenced by her social environment at the RRC and her progress was "delayed at times due to her tendency to socialize with the other residents."

24.     The Amended Petition for Warrant or Summons for Offender Under Supervision dated October 11, 2011, states that Inmate Bushey failed to appear for substance abuse testing on September 8, 2011.

25.     On September 9, 2011, she reported to the probation office and submitted to a drug test, which was positive for cocaine. She then admitted to using cocaine on or about September 6, 2011, which was approximately 4 months into her current pregnancy.

26.     In all, Inmate Bushey has given birth to three children, none of whom she had custody of prior to her incarceration.

27.     Additionally, including her current pregnancy, it has been documented that she has used illegal substances while pregnant with at least two of her children and possibly used illegal substances with all of them.

(Id., pp. 2 - 3.) Based on the foregoing, the Unit Team determined that Petitioner was not appropriate for placement in the MINT Program. (Id.) Petitioner, however, argues that Respondent did not consider her individual needs. Although Petitioner disagrees with the outcome, there is no doubt that Petitioner received an individualized assessment for placement in the MINT Program using the factors contained in Section 3621(b) and P.S. 7310.04. The Unit Team clearly considered Petitioner's history and characteristics, her offense conduct that included the use of drugs during her current pregnancy, the resources of the MINT program, and the sentencing judge's orders.[3] Therefore, the undersigned finds that the BOP appropriately considered Petitioner for placement in the MINT Program pursuant to Section 3621(b) and P.S. 7310.04.

**B.    RRC Placement:**

Title 18 U.S.C. § 3624(c)(1) governs pre-release RRC placements. As amend by the Second Chance Act of 2007, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

The Second Chance Act required that the BOP issue new regulations designed to ensure that RRC placements are "(A) conducted in a manner consistent with section 3621(b) of this title; (B)

---

[3] Although Petitioner contends that she did not begin to use drugs until the age of 18 and that she was only three months pregnant when she admitted to using cocaine, the Court finds the foregoing dispute of facts to be immaterial. The fact remains that Petitioner has a history of drug use and a history disregarding the welfare of her unborn child by using drugs while pregnant.

determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). In compliance with the above, the BOP adopted regulations set forth in 28 C.F.R. § 570.20 - .22. Section 520.21 provides that a prisoner's maximum allowable time in a RRC placement is 12 months. See 28 C.F.R. § 570.21. The regulations, however, do not set any minimum amount of time that a prisoner must spend at a RRC placement. Section 520.22 requires the BOP to make RRC placement decisions "on an individual basis" and to allow placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." See 28 C.F.R. § 570.22. The 12-month RRC period is a statutory maximum and it is not mandatory that prisoners receive 12-months in RRC placement. See 18 U.S.C. § 3624(c); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir. 2005)(stating that "the BOP may assign a prisoner to [a RRC placement] does not mean that it must").

Based upon a review of the record, the undersigned finds that Petitioner has appropriately been considered for RRC placement pursuant to Section 3621(b). Respondent filed a Declaration from Ms. Altizer explaining the process used to determine the length of RRC placement. (Document No. 9-1.) Specifically, Ms. Altizer states that the Unit Team meets with an inmate during Program Review, which is the process used by the BOP to review inmate progress and to tailor individual programs to meet particular needs of each inmate. (Id., p. 5.) During the Program Review held on December 5, 2011, the Unit Team considered Petitioner for prerelease placement in a RRC. (Id., pp. 4 - 5.) During the Program Review, the Unit Team noted that Petitioner possessed numerous positive factors, such as "consistent social support available;" "displays good communication skills;" "complies with treatment recommendations and/or takes medications as prescribed;" no history of

11

mental health problems; "no significant history of violence;" "active participation in social/ civil organization;" provides "assistance to strangers without expectation of reward;" "fulfills financial obligations;" and  "possesses public transportation skills and has access to public transportation." (Id., pp. 7 - 18.) The Unit Team noted the following negative factors: "no consistent history of employment 5 years prior to incarceration;" "post-incarceration employment not secured;" "children under the age of 21;" "does not have health insurance upon release;" "evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest;" a criminal history involving two or more convictions; "criminal history contains evidence of influence by others;" "no efforts to make amends for crimes;" no knowledge of maintaining checking or savings accounts; no knowledge of utilizing an ATM debit card;  no positive credit history; no valid driver's license;  and "does not own personal vehicle with appropriate insurance." (Id.) Based upon the criteria set forth in 18 U.S.C. § 3621(b), the Unit Team recommended Petitioner to be placed in a RRC for 0-90 days. (Id.) Specifically, the Unit Team noted that even though Petitioner had consistent social support available, she still needed to work on completing other areas of review and had not secured a release residence. (Id., p. 4.) The Unit Team completed an additional Program Review on February 21, 2012, where they continued to recommend a 0-90 day RRC placement noting that Petitioner was a supervised release violator and had "no secure residence." (Id., pp. 4 - 5, 20 - 33.) Petitioner, however, argues that Respondent failed to consider her specific needs. Although Petitioner disagrees with the outcome, there is no doubt that Petitioner received an individualized assessment for a RRC placement using the factors contained in Section 3621(b). See Syrek v. Phillips, 2008 WL 4335494 (N.D.W.Va. Sep. 17, 2008)(finding that "the BOP must consider the § 3621(b) statutory factors" and "cannot rely upon a categorical formula to determine the length of an inmate's CCC placement"); also see Specter v. Director Federal Bureau of Prisons,

2010 WL 883733, * 5 (D.S.C. Mar. 5, 2010)(slip copy)(stating that "[u]nder these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on § 3621(b) factors"); Garrison v. Stansberry, 2009 WL 1160115 at * 5(finding that "the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis"). Accordingly, the undersigned finds that the BOP appropriately considered Petitioner for RRC placement pursuant to Section 3621(b).

### PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Application to Proceed *in Forma Pauperis* (Document No. 7.), **DISMISS** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241(Document Nos. 1 and 8.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made

and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: March 27, 2012.

R. Clarke VanDervort
United States Magistrate Judge